### IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
**Northern Division**

KELSEY WILBORN, JR.                                                                                                    PLAINTIFF

VS.                                                                                     CAUSE NO. 3:22-cv-187-DPJ-FKB

HOLMES COUNTY, WARDEN BARRY RULE, HOLMES COUNTY SHERIFF WILLIE MARCH, AND CORRECTIONAL STAFF JOHN DOES 1-20.

                                                                                                                       DEFENDANTS

---

### COMPLAINT
**Jury Trial Demanded**

---

**COMES NOW,** Plaintiff Kelsey Wilborn, Jr., by and through counsel, and files his Complaint against Defendants Holmes County et al., for violations pursuant to the Eighth Amendment to the United States Constitution and 42 U.S.C. § 1983 as follows:

### I. THE PARTIES

1.     Plaintiff Kelsey Wilborn, Jr. is an adult resident citizen of Hamilton County, TN, recently released from prison. He is currently residing at 7307 Midfield Drive, Chattanooga, TN 37421.

2.     Defendant, Sheriff Willie March, the duly elected Sheriff of Holmes County, is sued in both his individual and official capacities. Defendant March may be served with process at 23240 Hwy 12 East, Lexington, MS, 39095, or wherever he may be found. At all material times, Defendant March was the Sheriff of Holmes County, Mississippi, vested with the responsibility and authority to hire, train, supervise, set, adopt, implement, and enforce policies and procedures at the Holmes-Humphreys County/Regional Correctional Facility and to provide protection to the citizens of Holmes County, Mississippi, and the state of Mississippi, including Kelsey Wilborn, Jr. Defendant March, at all times material hereto, was acting under color of state law in his official capacity as the Sheriff of Holmes County, Mississippi, and the actions of Defendant March were done and performed under the color and pretense of ordinances, regulations, policies, customs, and usages of Holmes County, Mississippi, and the State of Mississippi.

3.     Defendant, Barry Rule, is sued in both his individual capacity and in his official capacity as Warden of Holmes-Humphreys County/Regional Correctional Facility. Defendant Rule may be served with process at 23234 Hwy 12 East, Lexington, MS 39095, or wherever he may be found. Defendant Rule, at all times material hereto, was acting under color of state law in his official capacity as Warden and head prison official of Holmes-Humphreys County/Regional Correctional Facility. Defendant Rule had the authority, responsibility, and duty to protect the prisoners under his supervision from violence at the hands of other prisoners. The acts and omissions of Defendant Rule were done and performed under the color and pretense of the ordinances, regulations, policies, customs and usages of Holmes County, Mississippi and the State of Mississippi.

4.     Defendants John Doe 1-5, in their individual and official capacity as Mr. Wilborn's Case Managers, at the Holmes-Humphreys County/Regional Correctional Facility. Defendants Doe 1-5, at all times material hereto, were acting under color of state law in their official capacity as Case Managers of Holmes-Humphreys County/Regional Correctional Facility.

5.     Defendants John Doe 5-10, in their individual and official capacity as Chief of Security at the Holmes-Humphreys County/Regional Correctional Facility. Defendants Doe 5-

10, at all times material hereto, were acting under color of state law in their official capacity as Chiefs of Security of Holmes-Humphreys County/Regional Correctional Facility.

6.     Defendants John Doe 11-15, in their individual and official capacity as Facility Administrator at the Holmes-Humphreys County/Regional Correctional Facility. Defendants Doe 11-15, at all times material hereto, were acting under color of state law in their official capacity as Facility Administrators of Holmes-Humphreys County/Regional Correctional Facility.

7.     Defendants John Doe 16-20, in their individual and official capacity as correctional officers at the Holmes-Humphreys County/Regional Correctional Facility. Defendants Doe 16-20, at all times material hereto, were acting under color of state law in their official capacity as correctional officers of Holmes-Humphreys County/Regional Correctional Facility.

8.     Defendant Holmes County is a political subdivision of the State of Mississippi, and may be served upon its Chancery Clerk, Charlie Luckett, at 2 Court Square, PO Box 1211, Lexington, MS 39095.

## II. JURISDICTION AND VENUE

9.     This court has federal question jurisdiction pursuant to 28 U.S.C § 1331 and civil rights jurisdiction pursuant to 28 U.S.C. § 1343 for a cause of action arising under 42 U.S.C. § 1983 and the Eight Amendment of the United States Constitution.

10.    Venue is proper in this Court pursuant to 28 U.S.C § 1391 since the wrongful acts alleged in this action occurred in whole or in part within Holmes County, which is located within the Southern District of Mississippi of the United States District Court.

## III. FACTS

11.    Defendants Holmes County, Warden Barry Rule, Sheriff Willie March, and John Does 1-20, upon information and belief, were on notice of multiple prior assaults and attacks on Mr. Wilborn by a gang known as the Vice Lords, for which Mr. Wilborn provide on multiple written and verbal accounts, requests for protective custody or separation from his known enemies.

12.    Upon admission to the Holmes-Humphrey's County/Regional Correctional Facility ("HHCRCF"). Mr. Wilborn begged the Defendants during his initial reception process to place him in Protective Custody, as he had learned that some of the Vice Lords who had previously assaulted him in other facilities, were housed at the HHCRCF. The Defendants acted with complete indifference towards Mr. Wilborn's pleas for Protective Custody.

13.    Upon information and belief, the Defendants had in place a policy for the Reception and Orientation of newly arrived inmates. Upon reception inmates are assigned to a facility Classification Case Manager who completes an Admission Summary. [1]

14.    Upon information and belief, the Defendants had in place a policy and procedure for the Classification of inmates at the HHCRCF. These policy and procedures were established by the Defendants to govern the classification process, which amounted to: "During the initial reception process all inmates will be processed, screened and given a housing assignment. Inmates will be advised to take this opportunity to inform staff of all significant factors affecting their welfare such as problems or concerns. During this initial encounter staff trained in intake processing will make every effort to reduce stress and be respectful of the inmate's dignity. Appropriate identification of an individual's inmate's housing and supervision needs will be the focus of the classification program." [2]

---

[1] *See* **Exhibit A**, HC 022
[2] *See* **Exhibit A**, HC 024-027

15. Upon information and belief, Mr. Wilborn informed the Defendants during the Initial Reception Process of all the significant factors affecting his welfare, for which he requested protective custody or separation from his enemies of record.

16. Upon information and belief, the Defendants' Classification Policy stated, "Classification is a means of identifying and categorizing various inmate traits, characteristics and potential risks, in order to house inmates in a safe, humane manner. Proper classification also assures secure facility operations and facilitates staff and public safety… Inmates who display special needs during the intake booking process will be diverted to special housing, if required. The classification system will divide inmates into groups that reduce the probability of assault and disruptive behavior. At a minimum, the classification system evaluates the following… b. History of assaultive behavior… f. Enemies of record."[3]

17. Upon information and belief, Defendants' classification policy and procedure stated: "To ensure the health and safety of all involved, physical separation will be maintained between the following categories of inmates: … Close custody cases and those who may be violent or harmful to themselves or others and inmates likely to be exploited or victimized by others". [4]

18. During intake, Mr. Wilborn begged for protective custody from his enemies of record, the members of the Vice Lords gang, who upon information and belief, had a history of assaultive behavior. The Defendants' ignored Mr. Wilborn's pleas for protection, in violation of their own policies and procedures.

19. Upon information and belief, Mr. Wilborn resisted the Defendants and refused to be placed in the general population or in housing with his enemies of record. Instead of listening to his pleas or passing his requests up the chain of command, the Defendants threatened Mr. Wilborn with RVRs and physical harm if he did not go to a housing unit. Mr. Wilborn then proceeded to beg the Defendants to personally see the Warden or Sheriff but the Defendants refused to relay his request up the chain of command for an audience with the head prison officials.

20. Being unaffiliated with any gang, Mr. Wilborn was an easy target for the gang members. Upon information and belief, the first attack occurred at the Marshall County Correctional Facility in Holly Springs, MS, and the second beating occurred after being transferred to the Bolivar County Regional Correctional Facility in Cleveland, MS. After each attack, Mr. Wilborn indicated that he wished for protection against future harm and threat from the Vice Lords, for which he filed multiple complaints within the Administrative Remedy Program (ARP) system.

21. Upon information and belief, Mr. Wilborn submitted written notice ARP reports to officials, on January 4th, 2017, January 3rd, 2018, and August 17, 2018, regarding his fear of being attacked by members of the Vice Lords gang.

22. Upon information and belief, the Defendants ignored Mr. Wilborn's begging and pleas for protective custody and separation from his enemies of record. At the time Mr. Wilborn pleas for protective custody were denied, he arrived at the assigned housing unit, where he was immediately approached by a member of the Vice Lord Gang who communicated that he knew Mr. Wilborn from another facility and that there was a hit out on Mr. Wilborn.

23. Upon information and belief, Mr. Wilborn immediately told the Defendant Correctional Officer on duty, to transfer Mr. Wilborn because he feared for his life, or to report the request for protective custody up the chain of command. The Defendants' continued to be deliberately indifferent, and ignored Mr. Wilborn's request for protective custody or to be transferred to a different housing unit.

24. Upon information and belief, Defendants had in place policies and procedures for Security and Control. This policy was to "establish guidelines for the management of Security

---

[3] *See* **Exhibit A**, HC 026.

[4] *Id*, HC026-027.

Threat Group."[5] The policy defines Security Threat Group (STG) as any "formal or informal organization, association or group of persons, which may possess a common name, identify a sign or symbol whose members or associates currently engage in illegal activities prior to confinement and or facility policy violations/unlawful acts during confinement."[6] The members of the Vice Lords Gang should have been classified as a Security Threat Group.

26. 25. The Defendants' Security and Control policy stated in relevant part: "It is the policy of [HHCRCF] to maintain a zero tolerance for Security Threat Group members whose validation and or actions pose a threat or potential threat to the safety of staff, offenders, the public, and the security of the facility. To provide a system that identifies and monitors the movements and activities of inmate who pose a significant concern to safety, security, and orderly management of the facility."[7]

26. Upon information and belief, Mr. Wilborn continued to receive daily threats from his known enemies because they believed that Mr. Wilborn had snitched on fellow members of the Vice Lords Gang and threatened to press charges after being assaulted by members of the Vice Lords Gang during his incarceration at other facilities.

27. Upon information and belief, Mr. Wilborn wrote multiple personal letters to the Defendants Sheriff March and Warden Rule, communicating to both of the Defendants regarding his prior assaults at other facilities, the threats made to Mr. Wilborn at the HHCRCF by his enemies of record, and the urgency for which Mr. Wilborn needed to be moved to protective custody or at least to a housing unit separate from his known enemies in the Vice Lords Gang.

28. On or about April 11, 2019, at least eight fellow prisoners of the Holmes-Humphrey's County/Regional Correctional Facility and members of the Vice Lords Gang, jumped and viciously assaulted Mr. Wilborn, beating him until the assailants became tired. During the attack, Mr. Wilborn repeatedly cried for help, and pleaded with correctional officers on duty to remove him from the area.

29. The April 11, 2019 assault occurred within the premises of the Holmes-Humphreys County/Regional Correctional Facility with Defendants John Does 1-20, upon information and belief, watching closely by from the hall, security tower, and cameras.

30. The Defendants knew or should have known of the attack, and made no attempt to intervene before, during, and after the assault of Mr. Wilborn. The Defendants failed to properly classify Mr. Wilborn and made no attempt to separate Mr. Wilborn from his enemies of record or place Mr. Wilborn in protective custody as he had requested, and as required by the Defendants' own policies and procedures.

31. Once the assailants finally became too tired to continue, the Defendants - after failing to intervene on behalf of Mr. Wilborn - took the battered victim to the emergency room at the University of Mississippi Medical Center Holmes County, in Lexington, Mississippi.

32. Upon admission to the emergency room, Wilborn was diagnosed with unspecified fractures of facial bones, contusions of the head, abrasion of right wrist, and contusion of left hand.

33. Priscilla Pulliam, NP, wrote that Wilborn was an assault victim of a gang fight assaulted by several persons, uncertain if any objects were used. Pulliam reported Wilborn's injuries as: "Frontal and right parietal scalp hematoma. Partially visualized left inferior orbital wall blowout fracture."

34. On February 5th, 2020, the Grand Jurors of the State of Mississippi, taken from the body of the good and lawful men and women of Holmes County, Mississippi, indicted eight of Mr. Wilborn's attackers for Aggravated Assault in relation to the April 11, 2019 attack at the Holmes-Humphreys County/Regional Correctional Facility.

---

[5] *Id.* HC 007.
[6] *Id.*
[7] *Id.*

35. After returning to the HHCRCF following medical treatment for the unprovoked beating he was subjected to, Warden Barry Rule, Holmes County, et al., with deliberate indifference for Mr. Wilborn's health and safety, repeatedly placed Mr. Wilborn back in close contact and confinement with his assailants and Vice Lord members, causing severe mental anguish, and further violated his Eighth Amendment rights.

36. Upon information and belief, Mr. Wilborn was ignored until the April 11, 2019 assault, and even after the assault the Defendants failed to address the situation or move Mr. Wilborn to protective custody or a housing unit separate from his assailants.

37. Upon information and belief, Mr. Wilborn's letters and verbal pleas to the Defendants continued to be ignored until Mr. Wilborn's family started calling Defendant Warden Rule in fear that another life-threatening assault was imminent.

38. Upon information and belief, after Mr. Wilborn's family called Defendant Rule multiple times, Defendant Rule called Mr. Wilborn to his office. Upon appearing at Defendant Rule's office, Mr. Wilborn begged Defendant Rule in person to transfer Mr. Wilborn to another facility, to provide protective custody, or at least separation in a separate housing unit from his known enemies.

39. Upon information and belief, after being personally put on notice, Defendant Rule continued to act with deliberate indifference towards the HHCRCF policies and procedures and towards Mr. Wilborn's safety, and ignored Mr. Wilborn's pleas to be transferred to another facility or for protective custody. Upon information and belief, Defendant Rule was only concerned with eliciting Mr. Wilborn's testimony regarding illicit drugs and contraband, not his testimony regarding his pleas for separation or protective custody from the physical and emotional harm he was subjected to, at the risk of Mr. Wilborn's life.

40. Upon information and belief, after the April 11, 2019 assault, Mr. Wilborn was placed back into a zone with his enemies of record. Only after countless continued threats and another standoff with Mr. Wilborn's enemies of record, members of the Vice Lords Gang, was Mr. Wilborn's request for transfer to a safer facility in Chickasaw County granted.

41. The Defendants acted with deliberate indifference by ignoring Mr. Wilborn's multiple pleas for protection during and after intake, and failed to properly classify Mr. Wilborn, for which they ignored his requests to provide Protective Custody to separate him from his known enemies housed at the HHCRCF.

42. Upon information and belief, Defendants had in place a policy for Special Management Inmates, which included procedures for inmates to be placed into protective custody.[8]

43. Upon information and belief, the Defendants' policy for protective custody provided the following: "Protective Custody: A status that an inmate may be placed in who requires protection due to threats of harms by others. There is a range of options with respect to inmates who need protective custody. For some, it is necessary to house them separate from the general population, in other cases transfer to another housing area is sufficient…. It is the policy of the [HHCRCF] to maintain safe secure housing for inmates who require detention or protection… Placement in Protective Custody Status: A protective custody inmate is one who requires protection due to threats of harm by others… An inmate is placed on protective custody only when there is documentation that protective custody is warranted and no reasonable alternatives are available. All requests from inmates for placement into protective custody shall be documented as quickly as possible and no later than twelve (12) hours of the request. Inmate Requests for placement into protective custody should be forwarded to the Facility Administrator or Chief of Security. The facility Administrator or designee shall initiate an investigation into the alleged threat to the inmate as quickly as possible and no later than twelve (12) hours of the request. The commencement of the investigation shall be documented on the Request to Official from and placed in the inmate's file. As quickly as possible and no later than thirty-six (36) hours of the receipt of the request, the inmate shall be placed in protective custody status unless: The investigation reveals no identifiable current threat of harm to the inmate. The basis for this

---

[8] *Id.* HC009-017.

determination, including statements from persons interviewed during the investigation, shall be documented… The matter is resolved by other methods such as rearrangement of the job or housing assignments of the inmate(s) involved." [9]

44. Despite begging for protective custody or a separate housing assignment apart from his enemies of record, and despite having filed multiple ARP Complaints for protection from members of the Vice Lords Gang, the Defendants acted deliberately indifferent and completely ignored Mr. Wilborn, in violation of their own established policies and procedures designed to ensure the health and safety of all involved at the HHCRCF, and ultimately in violation of the Eight Amendment to the United States Constitution.

44. Despite his repeated cries for help for assistance and protection, Defendants repeatedly failed follow their own policies and procedures designed to protect Mr. Wilborn from being violently attacked at the hands of his known enemies, a security threat group, members affiliated with the Vice Lords gang.

45. Upon information and belief, Defendants failed to provide staffing at levels adequate to protect Mr. Wilborn and others of attack, or to intervene in the event of an attack by a prisoner to another prisoner. Presence of an adequate number of correctional officers is necessary in order to satisfy the Constitutional requirement to keep inmates safe from cruel and unusual punishment.

46. Upon information and belief, Defendants had in place a policy to ensure adequate personnel staffing. The policy stated that the HHCRCF Administrator "shall regularly evaluate and revise staffing assignments as needed to meet existing and changing program requirements. These reviews shall include: A regular systematic review of all personnel requirements to ensure the availability of staff, programs, and support services to the inmate population… A formula determination of the number of positions which are required to staff the [HHCRCF}… Evidence that the vacancy rate of authorized positions does not exceed minimum coverage requirements."[10] Finally, the Personnel Policy states: "It shall be the policy of the [HHCRCF] not to exceed a maximum of 10 percent vacancy rate for any eighteen month period among staff positions authorized for working directly with inmates".[11]

47. Upon information and belief, Defendants failed to uphold its own Personnel Policy, which could have made it possible to prevent the physical and emotional damages that Mr. Wilborn sustained as a result of the Defendants acts and omissions.

48. Upon information and belief, after receiving written notice of the above attacks through the ARP requests in Mr. Wilborn's inmate file, and after multiple verbal requests for separation and protection, the named Defendants acted deliberately indifferent by ignoring his requests and pleas, whereby they failed to protect Mr. Wilborn by repeatedly placing him back in the general population and same housing units as his known enemies, making him easily accessible to Vice Lords members, violating his Eighth Amendment rights to the United States Constitution.

49. Defendants Sheriff Willie March, Warden Barry Rule, and Holmes County et al., must have a policy, custom, or practice in place, for which inmates' petitions and cries for help and protective custody, are heard, and then passed up the chain from subordinates to supervisors.

50. Clearly, an effective policy, practice, or custom for protecting the inmates within the system who are at risk of harm and injury at the hands of known enemies or enemies of record, completely failed to act in protecting his humanity and his rights, as he continued to be ignored and placed in close confinement and housing units with members of the Vice Lords gang, without any regard to his verbal and written pleas for help and separation form his known enemies.

---

[9] *Id.*
[10] *Id.* At HC 001.
[11] *Id.* At HC 002.

51. On or about April 11, 2019 and at all relevant times afterwards, Defendants Holmes County et al through its operatives, agents, and/or employees of Holmes-Humphreys Regional County Correctional Facility, maintained exclusive control of the inmates in their custody, including Mr. Wilborn and his eight assailants.

52. In view of the above facts, the Defendants acted with subjective recklessness and deliberate indifference in failing to protect Mr. Wilborn from the threat and ultimate physical violence posed by and perpetrated by the eight assailants, for which the Defendants were on written and verbal notice of the conditions of Mr. Wilborn's incarceration, and that his refusal to affiliate with a gang in prison, namely the Vice Lords, should have been classified as known enemies which posed a substantial risk of serious harm to Mr. Wilborn, a risk that had resulted in the unnecessary and wanton infliction of pain on multiple prior occasions.

53. The acts and omissions of the Defendants were the proximate cause of the injuries and harm suffered by Mr. Wilborn.

54. After his release from custody, Mr. Wilborn accepted a job as a warehouse worker in Chattanooga, TN. Mr. Wilborn continues to suffer due to his intense body pain in relation to his assault, particularly his shoulder, head, and teeth, rendering him unable to work as a warehouse worker. Mr. Wilborn has since received his Commercial Driver's License, and has received new employment.

55. Mr. Wilborn continues to receive threats from members of the Vice Lords Gang.

### IV. COUNT ONE - Violation of Eighth Amendment rights under the United States Constitution and under Chapter 42 United States Code Section 1983 – Failure to Protect from Violence at the Hands of Other Prisoners

56. Plaintiff realleges and incorporates by references the allegations contained in paragraphs 1-55.

57. Defendants before, on, and after April 11, 2019, were at all relevant times, acting under color of state law in their dealings, acts, and omissions with Mr. Wilborn.

58. "[P]rison officials have a duty … to protect prisoners from violence at the hands of other prisoners.'" [12] This duty is derived from the prohibition of "cruel and unusual punishments" [13] in the Eighth Amendment.

59. The Supreme Court has made it clear that "a prison official violates the Eighth Amendment only when two requirements are met." [14] One is that "the deprivation alleged must be, objectively, 'sufficiently serious.'" [15] "For a claim … based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." [16] "The second requirement follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eight Amendment.'" [17] "To violate the Cruel and Unusual Punishments Clause, a prison official must have a 'sufficiently culpable state of mind.'" [18] The Supreme Court has explained that "[i]n prison-conditions cases, that state of mind is one of 'deliberate indifference' to inmate health or safety."

60. Refusing to adopt an objective test for deliberate indifference, the Supreme Court explained requires that "Eighth Amendment suits against prison officials must satisfy a 'subjective' requirement.'" [19] There are two necessary components of the subjective requirement: (1) "the official must both be aware of facts from which the inference could be drawn that a

---

[12] *Farmer v. Brennan*, 511 U.S. 825, 833, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).
[13] U.S. CONST. AMEND. VIII.
[14] *Farmer*, at 834, 114 S.Ct. 1970.
[15] *Id*. (quoting Wilson v. Seiter, 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)).
[16] *Id*.
[17] *Id*. (quoting Wilson, 501 U.S. at 297, 111 S.Ct. 2321).
[18] *Id*. (quoting Wilson, 501 U.S. at 297, 111 S.Ct. 2321).
[19] *Farmer*, at 838, 114 S.Ct. 1970 (quoting Wilson v. Seiter, 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)).

substantial risk of serious harm exists," and (2) "he must also draw the inference." [20] Subjective recklessness is the test for deliberate indifference under the Eighth Amendment. [21]

61. Plaintiff will show at trial that the Defendants had significant inferences that Mr. Wilborn's health and safety was at a substantial risk of serious harm at the hands of his known enemies in the Vice Lords Gang, and that the inferences were drawn evidence by the multiple verbal warnings and pleas for protective custody provided to the Defendants, as well as the multiple written notices provided in Mr. Wilborn's inmate file, provided by the ARP reports from January 4th, 2017, January 3rd, 2018, and August 17, 2018.

62. Plaintiff will show at trial that Defendants failed to adhere to their own policies and procedures, like the Security and Control procedures and protective custody and classification policies as described above, which led to Mr. Wilborn's brutal beating and constant threats to his life and safety.

63. The inference that Mr. Wilborn's health and safety was at a substantial risk of serious harm at the hands of prisoners in the Vice Lords Gang must have been drawn by the Defendants no later than, and as a result of, the April 11, 2019 assault, and should have been drawn upon intake and classification.

64. In the aftermath of the attacks, the Defendants continued to fail to protect Mr. Wilborn and acted with subjective recklessness and deliberate indifference, placing Mr. Wilborn back in the general population and in housing units with his assailants and members of the Vice Lords gang.

65. Plaintiff will show at trial that he was subjected to the unnecessary and wanton infliction of pain on April 11, 2019, as a direct result of the subjective recklessness and deliberate indifference of Defendants in the failure to follow their own policies and procedures enacted with the purpose of protecting Mr. Wilborn from violence at the hands of prisoners in the Vice Lords Gang.

## V. COUNT TWO - Violation of Eighth Amendment rights under the United States Constitution and under Chapter 42 United States Code Section 1983 – Failure to Adequately Staff; Failure to Have a Policy, Practice, or Custom in Place to Handle Complaints

66. Plaintiff realleges and incorporates by references the allegations contained in paragraphs 1-65.

67. Defendant March serves as the chief law enforcement officer of Holmes county. Defendant March also serves as the chief officer of the Chancery and Circuit Courts with responsibilities such as, maintaining the county law library, the county courthouse, jail and protection of prisoners.

68. Defendant Sherriff Willie March, Holmes County et al., had and has a duty to adequately staff correctional facilities to protect inmates' Constitutional rights. [22]

69. If Defendants March et al., had upheld their duty to adequately staff the Holmes-Humphreys Regional County Correctional Facility, and follow the Personnel Policy, which is under their exclusive control, Mr. Wilborn's multiple verbal and written requests for protective custody from the Vice Lords Gang could have been heard.

70. If the Defendants had upheld their duty to adequately staff the Holmes-Humphreys Regional County Correctional Facility, which is under their exclusive control, the facility could have the staffing and man power necessary to intervene during the April 11, 2019 assault.

---

[20] *Id.* at 837, 114 S.Ct. 1970.
[21] *Id.*
[22] *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).

71. The Defendants should have put in place an effective policy, practice, or custom regarding the handling of requests for protective custody or separation form known enemies or for handling complaints of inmates suffering violent attacks and threats from other inmates. [23] Defendant's policy, practice, or custom, as described above in detail, completely failed to function properly in relaying the information to superior officers of the violence and constant threat of violence that Mr. Wilborn faced, and failed to properly classify Mr. Wilborn upon and after intake in refusing to grant his written and verbal requests for protective custody or for separation as he was repeatedly placed in housing units with his known enemies and assailants in the Vice Lords Gang.

72. As a result of the inadequate staffing, as well as the failure of the policy, practice, or custom regarding the classification of inmates with known enemies and requests for protective custody, Defendants completely failed to intervene before, during, and after the April 11th, 2019 attack on Mr. Wilborn, which resulted in the unnecessary and wanton infliction of pain, in violation of the Eighth Amendment.

### VI. COUNT THREE - Violation of Eighth Amendment rights under the United States Constitution and under Chapter 42 United States Code Section 1983 – Failure to Intervene

73. Plaintiff realleges and incorporates by references the allegations contained in paragraphs 1-72.

74. The Defendants had a duty to intervene. Corrections officers have both a duty to intervene during an attack by a fellow officer and a duty to intervene during an attack by an inmate or inmates in the prison in which they work. *See Smith v. Mensinger*, 293 F. 3d 641,650 (3d Cir. 2002): holding that a corrections officer's failure to intervene in a beating can be the basis of liability for an Eighth Amendment violation under § 1983 if the corrections officer had reasonable opportunity to intervene and simply refused to do so; *See Bistrian v. Levi*, 696 F.3d 352, 371 (3d Cir. 2012).

75. Upon information and belief, during the vicious assault on April 11th, 2019, Defendants, John Doe 1-20, were watching closely by from the hall, security tower, and cameras, as Mr. Wilborn was savagely beaten by eight assailants.

76. Instead of intervening and protecting Mr. Wilborn from the unnecessary and wanton infliction of pain, Defendants John Doe 1-20, stood recklessly by with deliberate indifference, as they watched the beating from the hall, the security tower, and the cameras, until the assailants became too tired to assault Mr. Wilborn any further.

77. In the aftermath of the attacks, Defendants failed to protect Mr. Wilborn and acted with subjective recklessness and deliberate indifference, placing Mr. Wilborn back in the general population with his assailants and members of the Vice Lords gang.

### VII. DAMAGES

78. Plaintiff is entitled to recover the following compensatory damages against all Defendants:
- Damages for severe bodily injuries;
- All past and future medical expenditures;
- Past and future pain and suffering;
- Lost wages;
- Past and future mental anguish and emotional distress;
- Loss of enjoyment of life; and
- Reasonable attorneys' fees.

79. Due to the egregious nature of Defendant's failure to intervene on behalf of Mr. Wilborn's life and safety, Plaintiff is entitled to recover punitive damages against Defendants.

---

[23] *Id.*

## VIII. PRAYER

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff demands judgment against all Defendants for compensatory damages in an amount to be determined by a jury. Plaintiff requests that he be awarded reasonable attorneys' fees and all costs of Court, together with post-judgement interest. Plaintiff further requests such other and more general relief to which he is entitled.

**RESPECTFULLY SUBMITTED**, this the 16th day of March, 2023.

                                            */s/ S. Watson Turnipseed*
By: _____
S. Watson Turnipseed
**ATTORNEY FOR PLAINTIFF**
MS. Bar. No. 106247; LA. Bar. No. 40088
400 Walnut St. Sumner, MS, 38957
829 Baronne St. New Orleans, LA, 70113
662-645-8636 (C)
watsonturnipseed@gmail.com